PLANTERS' PACKAGE CO. *v.* PARSONS.*

(Division B.   Feb. 4, 1929.)

[120 So. 200.   No. 27342.]

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 1505, p. 1306, n. 2; Trespass, 38Cyc, p. 1047, n. 19; As to criminal and penal liability of master for act of servant cutting timber on land of another without authority, see annotation in 41 L. R. A. 657; 21 R. C. L. 215.

*Wilson & Henley,* for appellant.

*M. S. McNeil,* for appellee.

GRIFFITH, J.  Appellant sued appellee for actual damages and for the statutory penalty on account of the unauthorized cutting by appellee of three hundred and sixty trees on the lands of appellant.  The parties were adjoining proprietors, the land owned by appellee having for some years been known as the McLemore place.  This place had, for a long time, been under fence, and, when appellee purchased the property, he was given to understand that the line separating his land from that of appellant was the fence aforesaid; and, when he sent his employees to cut the timber on his land, he instructed them to cut all the timber within his fence, and the employees who did the cutting admitted that this was the order given and no other; but the employees of appellee, in pursuing the work, cut not only the timber inside the fence, but went beyond and cut twelve trees outside.

It now turns out that the fence line in question was not the true land line, but was located, at the place of the trespass, over on the land of appellant.

The record, as it has been brought before us, is in an unsatisfactory condition, so much so that repeated reviews of it, both in chambers and in consultation, have been necessary in order to arrive at a definite and dependable conclusion.  This has been brought about by the fact that the locations of boundary lines, fences, and landmarks were involved in sharp issue between the

parties, and nearly all the testimony in the case was placed before the trial court and jury by the use of a map or diagram, and yet this diagram is not a part of the record. Typical of what effect this omission has had in making a large and important part of the record practically unintelligible are the following question and answer in the testimony of Mr. Wilson, the general manager of appellant company:

"Q. Did you notice the fences around there? A. Yes, sir. I have been over them both carefully. All the fences I saw there were built by Mr. Graves; I understood they were built by him. A little piece of fence had been built by Mr. Liston Strong. A fence run along here and came along within, say two hundred or one hundred fifty yards of this, up through here, and up north of that forty and along back here. This is an old field in here. That forty is there. And the fence run along, appeared to be the best estimate we could get over on that forty there. This is an old field with an old field running on this forty a little bit. There is a little bit of an old field in here about seven or eight acres in there. The only new fence is the fence Mr. Strong built from the corner of the land up here to the Graves fence, so it included this strip of open land."

When complaining of alleged error in the trial court, appellant brings a record here for our review, he should attend to it that a complete record is brought, and in such condition that we can see and know exactly what was the case made and the testimony taken in the trial court, and this too in such shape that this court, pressed as it is by case upon case, and by a constant stream of new cases coming on for determination, shall not be put to the unwarranted drudgery and waste of time in the labor of piecing out what the record is. This matter has been the subject of comment here in past years, and we reaffirm what in effect was then said, that we shall re-

serve the right to affirm, without review, when records are so presented.

We have, however, been able to make out of the record, imperfect as it is, enough to justify us in the conclusion that the complaint of error, that the jury did not allow the statutory penalty for the trees cut inside the McLemore fence, is not well founded. In view of the general situation, the many generations that have maintained their settlements in the county and in the community where this trespass occurred, the well-known inclination of the inhabitants in long occupied territory to accept fence lines as the correct lines, the practically undisputed testimony that, when appellee purchased the said McLemore place, he was led to rely, and did rely upon said fence as being the correct line—all this, we think, would preclude a recovery of the statutory penalty for cutting trees within the fence. The conditions mentioned were at least enough to put the appellee off his guard in the matter, and to place him, in the absence of express and satisfactory proof to the contrary—which we cannot make out from this largely unintelligible record—beyond the range of any just application against him of the highly penal demand under the statute.

Such being the case, the two erroneous instructions granted to the appellee, if they were erroneous, were not materially prejudicial.

But, as to the trees cut outside the fence, the testimony is undisputed that twelve of these were cut within the year, and the testimony nowhere shows any lawful excuse therefor. It is true the employee who was doing the work for appellee says he thought they ought to be cut, although outside the fence, because they were in an old field; but what being in an old field had to do with it he wholly fails to explain, or, if it be said that he did somehow or somewhere explain, we have failed to find any explanation that comes within the law as such. To

say that a trespasser thought this or that, without producing a state of facts upon which his thought could have a reasonable and prudent foundation, is no defense.

However, as has already been mentioned, appellee gave positive directions that this employee should cut only within the fence, and this is admitted. When an employer gives definite instructions to go only to a well-marked and clearly defined line, such as a fence or a stream, one so distinct and obtrusive that it could not be anticipated by any sort of reasonable supposition that the employee would go beyond it, the unauthorized act of the employee in departing in such a situation from the definite instructions, so easy to be followed, will not render the employer liable for the statutory penalty, although otherwise as to common-law damages. In such a case, there is a distinction, often overlooked, between damages, actual and exemplary, which are allowed against an employer by the rules of the common law upon general principles of public policy, and those special penalties, strictly statutory, which are designed chiefly as punishment, are *quasi*-criminal, and which therefore should be allowed against the employer only in case of culpable fault or omission on his part. 21 R. C. L. 215; 30 Cyc. 1341; 6 Labatt, Master & Servant, section 2497(3); *McCleary* v. *Anthony,* 54 Miss. 708; *Fairchild* v. *N. O. etc., R. Co.,* 60 Miss. 931, 45 Am. Rep. 427; *Smith* v. *Saucier,* (Miss.) 40 So. 329.

*Affirmed.*